**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **4:21-CR-66** |
| | § | |
| **LADONNA WIGGINS** | § | |

**UNITED STATES' RESPONSE TO DEFENDANT'S**
**MOTION TO MODIFY THE TERMS OF PRETRIAL RELEASE**

The United States files this response in opposition to Defendant's Motion to Modify Terms of Pretrial Release (DE 28). The United States requests that this Court deny Defendant's motion to return her passport and allow her to travel internationally, because such travel creates a risk of flight by Defendant.

## I.    Brief Summary

The Defendant makes the extraordinary request that she be allowed to travel to Croatia to supposedly explore "becoming a potential vendor for a sail week event in 2022." Defendant does not have an international business but operates a local bar purchased less than a year ago (with loan fraud proceeds). Furthermore, the Defendant states she wants to "experience a portion of this trip as a patron to better understand the logistics of sail week." An internet search shows that SailWeek is a "tour where you can party, relax and explore the best European destinations."

The United States contends that there is no legitimate business purpose for the

trip and that international travel creates an unacceptable risk of flight.  Defendant's current bond conditions do not prevent her from earning a living, and those conditions are not excessive.

## II.    Background

On February 24, 2021, a grand jury returned a nine-count indictment against Defendant, LaDonna Wiggins.  (DE 1).  Counts 1 and 2 charge Defendant with bank fraud in violation of 18 U.S.C. § 1344(1).  Counts 3 and 4 charge Defendant with false statement to a bank in violation of 18 U.S.C. § 1014.  Counts 5 through 9 charge Defendant with money laundering in violation of 18 U.S.C. § 1957.

Defendant was a full-time employee in the human resources department of a hydraulic fracturing services company prior to the fraud.  Defendant is indicted for fraudulently obtaining two Small Business Administration (SBA) guaranteed forgivable Paycheck Protection Program (PPP) loans authorized by the Coronavirus Aid, Relief, and Economic Security (CARES) Act.  Based on the fraudulent loan applications, Defendant received more than $3.6 million dollars into her personal bank accounts.  (DE 1).

Defendant provided false Form W-3 Transmittal of Wage and Tax Statements, payroll reports, business EINs, bank statements, numbers of employees, and business contracts in order to obtain the two PPP loans.  (DE 1).  Defendant then used the fraudulent proceeds for high-dollar purchases and withdrawals unrelated to any legitimate business activity, such as the purchase of homes, luxury vehicles, furniture,

designer bags, and a swimming pool.  (DE 1).

Defendant also used the fraud proceeds to purchase a local bar in Midtown, Houston, for $204,000, and to prepay a year of the bar's rent for $308,000. (DE 1 (payment to Basillios Investments LLC)).

As part of Defendant's assessment for release, Defendant was found to pose a risk of nonappearance due to the offense charged and Defendant's criminal history. Defendant also posed a risk of danger due to her prior arrest and conviction, and Defendant's prior conviction involving violence.  Section 3142 empowers a court to release a defendant "subject to the least restrictive further condition, or combination of conditions, that ... will reasonably assure the appearance of the person as required and the safety of ... the community."  18 U.S.C. § 3142(c)(1)(B).  In deciding whether and what conditions to impose, a court must consider: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

Magistrate Judge Christina Bryan considered these factors and found that certain conditions of release would reasonably assure the appearance of Defendant, and the safety of any other person and the community.  Defendant's conditions of bond include, but are not limited to:

- Executing an unsecured bond of $100,000, with a deposit of $5,000;
- Surrender U.S. Passport and/or Foreign Passport to the U.S. Pretrial Services Agency;

- Obtain no passport;
- Restricted on personal association, place of abode, or travel to the Southern District of Texas and outside travel to be preapproved by U.S. Probation;
- Not participate in payment protection program;
- No new lines of credit; and
- No access to any individual's personal or financial information other than self.

(DE 9).

At the time of arraignment, Defendant did not appraise the Magistrate Court of any international travel plans or the necessity to travel overseas for business purposes— because there is no necessity.   Although Defendant has subsequently complied with bond conditions for the past few months, this fact alone is insufficient to alter the Magistrate Court's prior analysis.[1]

### III.   International travel poses a serious risk of nonappearance

The United States asserts that there is a serious risk of nonappearance/ flight risk if Defendant is allowed to travel to Split, Croatia.

### A. Flight Risk Determination

The determination of whether a defendant poses a flight risk is made based on the preponderance of the evidence. *See, e.g., United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985).   Defendant faces serious charges, and the fraud is straightforward and clear.   Defendant is on notice that her most, if not all, of her assets are subject to

---

[1] Defendant asserts that she "has made every court appearance;" however, but for arraignment, no court settings have occurred in this case.  (DE 28 at 5).

forfeiture upon conviction.

Defendant is charged with nine counts.  If convicted, she faces up to thirty years in prison for four of those counts (bank fraud and false statement to a bank). Additionally, Defendant would be liable for $3.6 million dollars in restitution. Courts have even found that the severity of a potential sentence weighs heavily in favor of detention. *See United States v. Almasri,* Crim. A. No. H–07–155, 2007 WL 2964780, at *1 (S.D.Tex. Oct. 10, 2007) (finding severity of potential ten-year sentences weighed in favor of detention).

## B. Overwhelming Weight of the Evidence

The weight of the evidence against Defendant is overwhelming.  Defendant was a salaried employee in the human resources division of Company A prior to receiving the fraudulent loan proceeds.  In fact, one of the fraudulent documents she submitted in support of her loan application was an altered payroll record from Company A. The fraud occurred in May 2020, and that is when Defendant began her buying spree.

### 1.  Defendant did not have wealth or a bar prior to the loan fraud

Prior to receiving her first fraudulent PPP loan for $1,828,568, Defendant had approximately $2,222 in her checking account at Woodforest Bank.  (DE 1).  For this first PPP loan, Defendant provided a false Form W-3 Transmittal of Wage and Tax Statements for 2019, claiming she paid $8,722,079.24 in wages, tips, and other compensation in 2019 for a business.  (DE 1).  Defendant also provided a fraudulent Check Register Report (payroll report) as part of her loan application.  This Check

<u>Register Report was an altered report of the company where Defendant was employed</u>.

Defendant then obtained a second fraudulent PPP loan for $1,819,577. (DE 1). For this second PPP loan, Defendant submitted a false Form W-3 Transmittal of Wage and Tax Statements for 2019, claiming that she paid $8,577,756.24 in wages, tips, and other compensation in 2019 for a business.  Defendant also provided a false/altered bank statement indicating the account had a beginning balance of $1,093,862.73 for the month starting May 9, 2020.  (DE 1).  In reality, Defendant's bank account at Chase Bank had a negative balance beginning on May 9, 2020.  (DE 1).

### 2.  Defendant used the PPP Business Loans for Personal Purchases

Furthermore, Defendant did not use the $3.6 million in PPP loan funds for legitimate business purposes, such as paying employees or bills.  Instead, Defendant promptly:

- purchased two homes totaling almost a million dollars;
- purchased a Land Rover;
- made high-end purchases from Hermes, Gucci, Neiman Marcus, and Saks Fifth Avenue; and
- purchased a local bar and pre-paid its rent.

(DE 1).  Bank records show that those purchases, and many others, are directly traceable to the PPP loan fraud proceeds.[2]

---

[2] The United States has provided Defendant notice of its intent to forfeit these purchases.  There is a Notice of Lis Pendens on the house where the Defendant currently resides, as well as a Notice of Lis Pendens on the home Defendant purchased for a relative.  The United States has also been transparent about its belief that all profits the Defendant is acquiring from the local bar she

### 3.  Defendant has Incentive to Flee

If Defendant is allowed to leave the United States for Split, Croatia, she leaves behind only property and money subject to forfeiture when convicted, and she could take whatever funds she has accumulated from her cash withdrawals from the bar business.  Defendant could also easily travel to other countries once she arrives in Croatia—potentially where the United States does not have extradition.  Additionally, Defendant's passport expires in September 2021, only two months after her requested travel.

### IV.    Denial of international travel is appropriate

Defendant claims that her right to travel, and freedom to work and earn a living, is impeded if prohibited from traveling to Split, Croatia.  Travel restrictions are common bond conditions to assure a defendant's appearance, and an indicted defendant awaiting trial has no absolute right to travel.  Foreign travel could possibly be allowed in an appropriate situation, but in this case, the defendant <u>does not</u> have an international business but simply operates a local bar.  There is no need for the travel, so that is not a factor to weigh against the risk of flight.  There is no livelihood at stake here.  The Magistrate Court determined Defendant's release and pretrial conditions pursuant to § 3142.   No restrictions were placed on Defendant regarding her livelihood. Defendant's passport was surrendered, and Defendant was prohibited from obtaining a

---

purchased are traceable to fraud proceeds, and therefore subject to forfeiture.

new passport to ensure her presence at trial. (DE 9).

In *United States v. Salerno*, the Supreme Court addressed a constitutional challenge to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141–3150, contending that it violates the Excessive Bail Clause because it allows a court to set bail and order detention for reasons not related to risk of flight. 481 U.S. 739, 752–53 (1987). The Court held the Act did not violate the Eighth Amendment because "[t]he only arguable substantive limitation of the [Excessive] Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Id.* at 754. The Court's reasoning treats "bail" not narrowly, but broadly as "release before trial ... conditioned upon the accused's giving adequate assurance[s]." *Stack v. Boyle*, 342 U.S. 1, 4 (1951) (Similarly, bail has been described as reconciling "pretrial liberty with the need to assure the defendant's presence at trial," *Sistrunk v. Lyons*, 646 F.2d 64, 68 (3d Cir. 1981), and the Excessive Bail Clause as "applicable solely to ... conditions of release or detention designed to assure a criminal defendant's appearance at trial ...," *United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986)).

Defendant asserts the Eighth Amendment's prohibition of excessive bail would be violated if her request to travel to Croatia is denied. However, to violate the Eighth Amendment, the restriction must be "excessive in light of the perceived evil." *Salerno*, 481 U.S. at 754 (quotation marks omitted); *see also United States v. Gardner*, 523 F.Supp.2d 1025, 1031 (N.D. Cal. 2007). Defendant's release conditions are hardly excessive in light of the United States' legitimate interest in ensuring her appearance,

and there is a serious risk of flight if she is allowed to leave the country.  Defendant's assets, including her home and earnings from her bar, have been noticed as forfeitable if she is convicted.  Defendant is also facing a serious prison sentence and restitution in the amount of $3.6 million dollars.

Defendant contends that she has a right to travel internationally, citing *Kent v. Dulles*, 357 U.S. 116, 125 (1958).   The Supreme Court in *Kent* was confronted with the constitutional issue involving travel during what was the then emergency of the day: the threat posed by communists.  In that case, the Secretary of State was denying passports to citizens who might have communist beliefs, which prevented their international travel, potentially without due process.  The Court contrasted the right of interstate travel with the right of international travel, holding that while interstate travel was a virtually unqualified right, the right of international travel could be regulated within the bounds of due process. *Id.* at 126.  In the instant case, the Defendant has been indicted and is subject to bond conditions to assure her presence at trial.

Furthermore, notwithstanding its recognition of due process protection for the right to travel, the Supreme Court has upheld restrictions of foreign travel imposed by the Executive Branch in furtherance of its prerogative to conduct foreign affairs. *See, e.g., Zemel v. Rusk*, 381 U.S. 1, 13-14 (1965) (travel to Cuba properly denied); *Haig v. Agee*, 453 U.S. at 308-09 (revocation of rogue CIA officer's passport upheld). Here, a court in the Judicial Branch has set Defendant's conditions of release tailored to the circumstances of her case, in order to accomplish the dual objectives of § 3142: ensure

Defendant's attendance at judicial proceedings and protect other persons and the community.

Defendant retains her freedom to work and earn a living. Currently, Defendant owns a local bar in Midtown, Houston, and sells wigs—neither of which seem to have a relation to Croatia. When the United States was first appraised of Defendant's desire to travel to Croatia, it inquired what specifically the business entailed, including with whom Defendant would be meeting. The United States never received a specific response.

The only information the United States currently has regarding Defendant's primary work is based on a local bar that caters to patrons in Houston, Texas. Defendant has not given any detail regarding her "business" in Split, Croatia, to alleviate concerns whether any actual business will occur—and therefore, the possibility that Defendant could abscond.

Defendant, through her counsel, stated the following:

> The purpose of Ms. Wiggins' proposed trip to Croatia is to attend a pitch meeting to discuss becoming a potential vendor for a sail week event 2022. If everything goes well, Ms. Wiggins will also look for potential local food supply vendors. Ms. Wiggins will also experience a portion of this trip as a patron to better understand the logistics of sail week.

Email dated April 23, 2021. A simple web search of sail week in Split, Croatia, shows that patrons "[s]et sail on [a] fully-inclusive, 7 days skippered SailWeek tour where you can party, relax and explore the best European destinations." https://sailweek.tours/

(Last visited June 12, 2021).  Defendant is requesting to travel from July 2-11, 2021, which can amount to the days necessary to travel to Croatia, participate in sail week, and then depart—not leaving much time for the "business" she claims to be conducting. And once in Croatia, Defendant could easily travel within the surrounding countries. As stated earlier, the United States has given Defendant notice to seize her home, proceeds from Defendant's bar, and substitute assets to satisfy a potential $3.6 million restitution order if convicted.

## V.    United States' opposition

Defendant is correct that the United States' position that Defendant is spending fraud proceeds to bankroll her trip to Croatia does not fit squarely within the purpose of bond conditions—but risk of flight does.  The United States is concerned that due to the prison time exposure, plus Defendant's knowledge that the United States will be moving to seize her assets in forfeiture and/or to enforce the expected restitution order, the Defendant is a serious risk of flight if allowed to travel internationally.

The United States agrees that a defendant is presumed innocent until proven guilty, but the fact is that a Grand Jury has returned an indictment against the Defendant. The United States presented clear evidence that Defendant committed bank fraud, false statement to a bank, and money laundering because it believes Defendant committed these crimes.  Anything less than a belief in Defendant's guilt would be improper. Although Defendant does not stand convicted, she does stand indicted, and bond conditions to assure her appearance at trial are appropriate.  This is not the case of a

defendant who travels internationally to make a living, a fact which might weigh against the risk of flight.

A trip to Croatia in this case has no legitimate purpose but carries a serious risk of flight.  The United States submits that the Court should find by a preponderance of the evidence that there is a risk of flight if the Defendant is allowed to take an international trip to Croatia.

## VI.    Conclusion

WHEREFORE, for above-mentioned reasons, the United States respectfully requests that this Honorable Court deny the Defendant's Motion to Modify the Terms of Pretrial Release in order to travel internationally while awaiting trial.

Respectfully submitted,

JENNIFER B. LOWERY
Acting United States Attorney
Southern District of Texas


By:    */s Zahra Jivani Fenelon*
Zahra Jivani Fenelon
Assistant United States Attorney
U.S. Attorney's Office
1000 Louisiana, Suite 2300
Houston, Texas 77002

## **Certificate of Service**

I certify that a true and correct copy of this response was served on counsel of record, Patrick Mullin and Timothy Johnson, via electronic court filing on June 13, 2021.

*/s Zahra Jivani Fenelon*
Zahra Jivani Fenelon
Assistant United States Attorney