United States District Court
Southern District of Texas
**ENTERED**
August 18, 2023
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § § | CRIMINAL ACTION NO 4:21-CR-00066 |
| vs. | § § § | JUDGE CHARLES ESKRIDGE |
| LADONNA WIGGINS, Defendant. | § § § | |

### OPINION AND ORDER
### DENYING MOTION TO SUPPRESS

Defendant LaDonna Wiggins is charged by the United States with six counts of wire fraud in violation of 18 USC § 1343 and five counts of money laundering in violation of 18 USC § 1957. The charges relate to applications for Paycheck Protection Program loans for The Concession Stand, Wiggins & Graham Enterprise LLC, and Pink Lady Line, along with later transfers of the disbursed funds. Dkt 68 at 6–8.

Law enforcement officers executed a search warrant at Wiggins' home and seized such evidence as bank documents, laptops, an iPad, and a video camera. See Dkts 164-1, 164-2 & 164-3. Pending is a motion by Wiggins to suppress "any and all evidence obtained through, or derived from, the execution of" that warrant. Dkt 164.

The motion is denied.

### 1. Findings of fact

A suppression hearing was held on May 16, 2023, with testimony heard from one witness. Dkt 191. The parties submitted briefing and supporting documents in advance. See Dkts 164, 181 & 184. Unless stated otherwise, the

following facts are found to be credible and true based upon the testimony and evidence.

The evidence reviewed includes the application for a search warrant and the attached affidavit for Wiggins' residence at 17918 Bandera Ridge Lane, Cypress, Texas 77433. Also reviewed are an inventory of all items seized, information regarding the subject home, and photographs of the home taken during the search. See Dkts 181-2 (application for search warrant and attached affidavit), 164-1 (warrant and attachments) & 164-3 (inventory of all items seized).

The warrant application and supporting affidavit were approved on February 8, 2021, with the search following the next day. Dkt 181-2 at 22, 37–38; see also Dkt 164-1. Photographs of the home depict a single-family multi-bedroom residence with one front door and a driveway leading to a garage. Inside the home, a foyer opens up into a living room, with a single staircase leading upstairs to a second floor. Government Exhibits 4–6.

Agents executing the warrant first met Wiggins' son at the front door. He claimed that no one else was home. But Wiggins' cousin, Coadie Barnett Jr, and his girlfriend were found asleep in a bedroom during a protective sweep of the second floor. Barnett and his girlfriend were taken outside and put in hand restraints until the completion of the protective sweep and then permitted to leave. Dkt 164-2 at 1–2 (attached to briefing, not offered into evidence).

Wiggins returned to the residence during the search, and law enforcement walked through the house with her. Ibid. Evidence was seized from three bedrooms, an office, the kitchen, a vehicle, and a front room. No evidence was seized from the bedroom where Barnett and his girlfriend were found. Dkt 164-3.

The warrant affidavit asserted that there was probable cause to believe that Wiggins had engaged in a conspiracy to facilitate a criminal enterprise, with evidence of the violations at her residence. Dkt 181-2 at ¶ 49. Certain areas of the home, and access to and control of them, are

pertinent to the present inquiry. The warrant described the property as "a 5,255 square foot white two-story brick structure" with "five bedrooms and 4.5 bathrooms." It further specified that "the search is to include the confines of property, to include outbuildings, rooms, attics, storage areas including safes and all other parts therein," as well as vehicles. Photographs of the home were also included. Dkt 164-1 at 2–3. The affidavit also specifically noted that "several people share the PREMISES as a residence" and disclosed the possibility that "the PREMISES will contain storage media that are predominately used, and perhaps owned, by persons who are not suspected of a crime." Dkt 181-2 at ¶ 40.

Barnett testified as a witness for the defense. Dkt 191. He testified that he has lived at Wiggins' home since 2020. He explained that he has an informal, oral rental agreement for an upstairs bedroom under which he pays $450 per month in cash. He neither pays for separate utilities nor reimburses Wiggins based on his own usage. Upon inquiry, Barnett testified that Wiggins could ask him to leave at any time. He also confirmed that there is only one doorbell to the home, with no separate entrance or door for his use. Instead, he has his own key to enter the home, and he goes through the common area downstairs to get to his bedroom upstairs.

Photographs of Barnett's room show a bed, a nightstand and dresser, and a small walk-in closet. Defense Exhibits 2.1–2.5. Upon inquiry, Barnett stated that he didn't purchase the furniture or bedding for his room. He further testified that no one is allowed to enter the room without his permission, but also specified that his room has no separate key and only locks from the inside. He also stated that, for the TV in his room, he has a Roku streaming account for which he pays monthly under his own name.

Barnett additionally testified that he (i) shares a bathroom with Wiggins' daughter; (ii) has no appliances or method of cooking in his room and so shares the kitchen and laundry room with other family members living there;

and (iii) takes his trash to a main (not separate) trash bin and receives mail at the home (not his own) mailbox.

Upon inquiry, Barnett testified that nothing from his room was seized, nor was anything of his seized elsewhere. He also confirmed that he didn't tell law enforcement he was a tenant, that Wiggins was his landlord, or that the room where he was found was his rental unit. He explained that he only discussed with the officers his familial relationship with Wiggins and his occupation, and he answered inquiries about certain items in his closet.

No testimony or evidence otherwise establishes that anyone informed the officers that the second-floor bedroom where Barnett and his girlfriend were found was a rented room. Likewise, none of the reports from the officers make reference to Barnett being a tenant of Wiggins. See Dkt 164-2 (attached to briefing, not offered into evidence).

### 2. Legal standard

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

This textually "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *United States v Leon*, 468 US 897, 906 (1984). But the Supreme Court long ago established the exclusionary rule, which provides that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v Calandra*, 414 US 338, 347 (1974), citing *Weeks v United States*, 232 US 383 (1914), and *Mapp v Ohio*, 367 US 643 (1961). This "operates as 'a

judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.'" *Leon*, 468 US at 906, quoting *Calandra*, 414 US at 348. And "evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the defendant's immunity from unreasonable searches and seizures under the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial." *Elkins v United States*, 364 US 206, 223 (1960).

A defendant seeking to suppress seized evidence generally "has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of her constitutional rights." *United States v Guerrero-Barajas*, 240 F3d 428, 432 (5th Cir 2001). But if "the government searches or seizes a defendant without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search or seizure was constitutional." Ibid.

### 3. Analysis

Wiggins argues that the evidence should be suppressed because the search warrant failed to specify that one of the bedrooms was a separate rental unit, thus invalidating the warrant. She alternatively argues that the search was unreasonable because it exceeded the scope of the warrant. Dkt 164 at 12–14.

The Government disagrees on both points. It also contends that Wiggins lacks standing to complain about any search related to Barnett's room—from which no evidence was seized, regardless. Dkt 181.

The standing issue will be addressed first and is dispositive. For completeness of review on any later appeal, the contentions on the merits will also be addressed.

### a. Standing

The Supreme Court long ago observed, "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously

asserted." *Alderman v United States*, 394 US 165, 174 (1969). The Fifth Circuit thus holds that, to justify suppression of evidence, the defendant "must show not only that the police committed an unreasonable search or seizure, but also that the search or seizure infringed a Fourth Amendment interest of the defendant himself." *United States v Beaudion*, 979 F3d 1092, 1097 (5th Cir 2020), quoting *Rakas v Illinois*, 439 US 128, 140 (1978) (cleaned up). In other words, the defendant "must show that 'his *own* Fourth Amendment rights [were] infringed by the search [or] seizure which he seeks to challenge.'" Ibid, quoting *Byrd v United States*, 138 S Ct 1518, 1526 (2018) (emphasis original).

A defendant can establish the requisite personalized interest in two ways. One objects to "the physical intrusion of a constitutionally protected area in which he has a property interest," and the other objects to "government action that violates a reasonable expectation of privacy . . . in the place searched." Ibid (citations and quotation marks removed). The inquiry is specific as to both defendant and place under either approach, meaning that "it requires that a *particular* defendant (the suppression movant) have a property or privacy interest in a *particular* place (the area searched)." Ibid (emphasis original).

Wiggins argues that the warrant failed to specify the rental unit and lacked a separate search warrant for the rented room. Dkt 164 at 12. The Government responds that she lacks standing to raise such contention, arguing that "it would be Barnett's (and potentially his girlfriend's) Fourth Amendment rights that were violated, not Wiggins." Dkt 181 at 2, 5. Wiggins replies that she has a property interest in the rental unit because she is the "sole owner of the residence," and so she can challenge the search under the Fourth Amendment. Dkt 184 at 5.

Wiggins doesn't assert that she personally had a reasonable expectation of privacy in the rental unit. The dispute thus boils down to whether Wiggins, as landlord, had a property interest in the rental-unit bedroom. Prior decisions where landlords asserted Fourth Amendment

challenges demonstrate that she lacks standing to challenge the search of the subject bedroom.

For example, the Fifth Circuit confronted such an assertion by a landlord in *Enclave Arlington Associates Ltd Partnership v City of Arlington, Texas*, 401 Fed Appx 936 (5th Cir 2010). The case concerned residents who lived at an apartment complex next to the Dallas Cowboys football stadium. They began to experience significant delays during events at the stadium because they had to place a "hang tag" in their car and speak to a police officer in order to enter and exit the complex. The partnership that owned the complex sued the city, arguing that the city had engaged in an unreasonable seizure under the Fourth Amendment due to this denial of access to and from the complex during events. Id at 937. The Fifth Circuit held that the landlord didn't have standing to assert a Fourth Amendment claim on behalf of the tenants because the potentially infringed rights were the personal rights of the tenants, not the landlord. Id at 938–939.

Likewise, "it has long been settled that a landlord's mere ownership interest does not create a privacy interest in property he rents out to others." *Shaw v City of Fostoria*, 2009 WL 3682330, *1 (ND Ohio), citing *Chapman v United States*, 365 S Ct 610 (1961). True, Wiggins owns the entire home. But she leases and gives rights to the upstairs bedroom to Barnett. No evidence suggests that Barnett and Wiggins entered into a lease that specified Wiggins maintained any possessory interest in the room at the time of the warrant's execution. On this record, it is Barnett who had "the exclusive right of possession" pertinent to the suppression inquiry. *United States v Colby*, 2007 WL 9718271 at * 4 (WD Tex), citing *State National Bank of El Paso v United States*, 509 F2d 832, 835 (5th Cir 1975).

A number of district court decisions are in accord with holding that Wiggins lacks a sufficient property interest that would allow her to assert Fourth Amendment claims based on the search of a leased-out room. For example, see *Dearmore v City of Garland*, 400 F Supp 2d 894, 899–900 (ND Tex 2005) (finding lack of Fourth Amendment

7

standing regarding commercial property because "property owner has no expectation of privacy if the property is leased"); *Colby*, 2007 WL 9718271, *3–4 (landlord who owned duplex found to lack standing despite possessory interest in apartments as owner, concluding that "common-law property rights do not necessarily translate into protected privacy rights"); *Smith v Lanier*, 779 F Supp 2d 79, 89–90 (DDC 2011), affirmed, 726 F3d 166 (DC Cir 2013) (owner of entire single-family residence who rented out apartments within lacked standing to assert Fourth Amendment violation as to search of one apartment).

The motion by Wiggins to suppress the evidence seized from her residence will be denied for lack of standing to complain about any search related to Barnett's room. He is instead the only person who could bring a Fourth Amendment challenge to the search of his rental unit. And any such argument by him would be nonsensical where the record establishes that nothing of his was seized—either from in his room or anywhere else in the home.

b.   Reasonableness

The challenge by Wiggins would fail on the merits even assuming that she had standing.

i.   Specificity of warrant

The express terms of the Fourth Amendment dictate that a proper warrant is one "particularly describing the place to be searched, and the persons or things to be seized." The Fifth Circuit observes that this "demands that the place to be searched and the items to be seized be described with sufficient particularity so as to leave 'nothing . . . to the discretion of the officer executing the warrant.'" *United States v Allen*, 625 F3d 830, 835 (5th Cir 2010). This doesn't mean that a warrant can't be broad enough to include an entire house, but rather, that the house must be particularly described. For as the Fifth Circuit explains, "Reasonable specificity is required, not 'elaborate detail.'" *United States v Triplett*, 684 F3d 500, 504 (5th Cir 2012); cf *Groh v Ramirez*, 540 US 551, 558 (2004) (warrant found lacking where stating "that the

8

items consisted of a 'single dwelling residence . . . blue in color'").

The subject warrant and its attachments specified Wiggins' home by address, along with description of its appearance, photographs, and details that "the search is to include the confines of the property, to include outbuildings, rooms, attics, storage areas including safes and all other parts therein." Dkt 164-1 at 3. It then further described and listed the items to be seized over six pages. Id at 4–10. Simply put, detail in the warrant was abundant, and no officer was left with unbounded discretion.

Wiggins focuses on the fact that the warrant didn't specify that one of the bedrooms of the residence was a separate rental unit. She asserts that courts have "held that where a residence contains separate rental units, the warrant must specify the unit(s) to be searched." Dkt 164 at 12. For this proposition, she cites *United States v Cannon*, 264 F3d 875 (9th Cir 2001), and *United States v Greathouse*, 297 F Supp 2d 1264 (D Or 2003). Properly understood, neither case supports her contention.

*Cannon* involved a warrant that authorized the search of a "single family dwelling." There were two structures within the fence that surrounded the house, but the agent believed the rear building to be a garage when applying for the warrant. It turned out that the garage had been converted into a self-contained unit twenty years prior and had three separate entrances. When the officers entered that building, they realized it was a place where someone lived due to the presence of appliances and its own bathroom. 264 F3d at 878. On these facts, the Ninth Circuit concluded that it was a separate dwelling for which a separate warrant was required. Id at 879.

Far from stating a blanket rule regarding warrants that happen to address what turns out to be multiple units in a single residence or property, *Cannon* stands simply for the proposition that if there are indicia that a building apart from the main house is a separate residence, a separate search warrant is needed. And so, for example,

even in that case, the Ninth Circuit held that a storage room in the rear building did *not* require a separate search warrant because it fell within the curtilage of the house— thus being included within the scope of the warrant. Ibid.

*Greathouse* involved a warrant to search a residence within which several unrelated persons lived together. One of the residents advised the officers upon arrival that the defendant was a renter and lived in the back bedroom on the first floor. On that bedroom door, the defendant had a sign stating, "Do Not Enter." The court concluded that the defendant had taken steps to preserve the area as private and that his expectation of privacy was reasonable. This meant that once the officers learned the above information, they "should have known there were separate residences within the house and should have stopped and obtained a second warrant for the defendant's bedroom." 297 F Supp 2d at 1273–75. But again, far from stating any blanket rule with respect to warrants, *Greathouse* stands only for the proposition that when officers learn that a renter lives within a particular room, they should get a separate warrant.

At the suppression hearing, Wiggins argued that the officers—either when obtaining the warrant or executing it—should have known that Barnett was renting a room from Wiggins. But she failed to adduce any evidence showing any indicia by which surveilling or executing officers could have come to the realization that there was a separate residence or rental unit within the larger home. No public records establish this living arrangement. Nothing about its entrance, mail, trash, kitchen, bathrooms, common areas, living arrangements, utilities, or any other aspect suggested separateness of units within. And importantly, no one—neither Barnett, nor his girlfriend, nor Wiggins' son, nor even Wiggins herself— informed the officers that Barnett was a tenant or that his room was a separate rental unit.

The precepts of neither *Cannon* nor *Greathouse* required a separate warrant here. To the contrary, the Government cites a number of cases clearly establishing

that there was no such need. See Dkt 181 at 8–10, citing, among others, *United States v Ferreras*, 192 F3d 5, 10–11 (1st Cir 1999) (specifying relevant factors pertinent to openness of access and indications of separateness or independent living); *United States v Hoston*, 2016 WL 4147642 at *8 (EDNC) (applying similar factors); *United States v Kyles*, 40 F3d 519, 524 (2d Cir 1994) (bedroom in multi-occupant residence isn't separate residential unit where not having own doorbell, mailbox, or independent outside access).

The warrant stated abundant detail supporting a search of the entire house. It was appropriately specific under the circumstances.

ii.   Scope of search

The Fourth Amendment requires that if "the scope of the search exceeds that permitted by the terms of a validly issued warrant . . . the subsequent seizure is unconstitutional without more." *Horton v California*, 496 US 128, 140 (1990). "As a general rule only items described in a search warrant may be seized." *Creamer v Porter*, 754 F2d 1311, 1318 (5th Cir 1985).

Wiggins contends that the search was unreasonable because it exceeded the scope of the warrant due to the search of Barnett's rental unit. Dkt 164 at 13. To the contrary, the search hewed closely to the warrant. It specifically authorized the search of the "confines of the property," including "outbuildings, rooms, attics, storage area including safes and all other parts therein." Dkt 164-1 at 3. It also authorized the seizure of "evidence, instrumentalities, and records" relating to suspected violations by Wiggins, such as bank records, memorandums, debit and credit access devices, cell phones, computers, hard disc drives, thumb drives and electronic copies of wire transfers. Id at 4–8.

No greater specificity was required. And the scope of the search was in express compliance with the warrant. Indeed, the described type of items are exactly what were seized. See Defense Exhibit 3. It is thus notable that

Wiggins doesn't even object that any particular piece of evidence was seized outside the scope of the warrant.

The search and the seizure were both reasonable under the Fourth Amendment.

### c. Good faith

The Government contends in the alternative that even if the search was somehow unconstitutional, the good faith exception to the exclusionary rule would overcome any need for suppression. See Dkt 181 at 12. This, too, is correct.

The Fifth Circuit holds the good-faith exception to pertain where "the official action was pursued in complete good faith" because "the deterrence rationale loses much of its force." *United States v Pope*, 467 F3d 912, 916 (5th Cir 2006) (cleaned up). This confines inquiry "to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." Ibid. Suppression will be granted only "in those unusual cases in which exclusion will further the purposes of the exclusionary rule." Ibid.

The Fifth Circuit has recognized four situations that might indicate the presence of bad faith and call for application of the exclusionary rule, even with a warrant:

- o The magistrate or judge issuing the warrant was misled by information known by the affiant to be false or made in reckless disregard of the truth;

- o The magistrate or judge issuing the warrant wholly abandoned the judicial role;

- o The supporting affidavit was so lacking any indicia of probable cause as to render official belief in its existence unreasonable; and

- o The warrant is so facially deficient—for example, utterly failing to particularize places to search and items to seize—that the executing officers couldn't reasonably presume it valid.

*United States v Ganzer*, 922 F3d 579, 588 (5th Cir 2019).

None of these are remotely applicable here. The Supreme Court mandates that constitutionality of a search is judged in this respect "in light of the information available to [the officers] at the time they acted." *Maryland v Garrison*, 480 US 79, 85 (1987) (upholding search of second apartment believed in good faith to be covered by warrant). Nothing here indicates that any of the involved officers knew that Barnett's room was a separate rental unit, or that anyone on premises even advised them of this fact—including Barnett himself. Instead, all indications are that they believed in good faith that the warrant allowably covered the search of the entire home.

There wasn't a problem with the specificity of the warrant or the execution of the search. But even assuming there were, the good-faith exception to the warrant requirement would require denial of the suppression motion by Wiggins.

4.   Conclusion

Defendant LaDonna Wiggins lacks standing to bring a Fourth Amendment claim for the search of Barnett's rental unit. But even if she had standing, the warrant was appropriately specific, the search was reasonable, and the good-faith exception would pertain regardless.

The motion to suppress the evidence seized at the Bandera Ridge Lane home is DENIED. Dkt 164.

SO ORDERED.

Signed on August 18, 2023, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge